*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICARDO E. BRENES,<br><br>        Plaintiff,<br><br>v.<br><br>THE CITY OF ASBURY PARK AND THE POLICE DEPARTMENT OF THE CITY OF ASBURY PARK; John Moor, MAYOR, CITY OF ASBURY PARK; David Kelso, ASBURY PARK CHIEF OF POLICE; James N. Butler, ASBURY PARK MUNICIPAL PROSECUTOR; Daniel J. DiBenedetto, MUNICIPAL COURT JUDGE; Dewitt Bacon, LAW ENFORCEMENT OFFICER CLASS I ASBURY PARK POLICE DEPARTMENT, ALL OF THE ABOVE BEING SUED INDIVIDUALLY AND IN THEIR CAPACITY AS EMPLOYEES OF THE CITY OF ASBURY PARK AND/OR THE ASBURY PARK POLICE DEPARTMENT,<br><br>        Defendants. | Civil Action No. 19-22204 (FLW)<br><br>**OPINION** |

WOLFSON, Chief Judge:

*Pro se* Plaintiff, Ricardo E. Brenes ("Plaintiff"), brought this civil rights action under 42 *U.S.C.* § 1983 against Defendants, the City of Asbury Park ("Asbury Park" or the "City"); Asbury Park Mayor John Moor ("Mayor Moor"); Municipal Court Judge Daniel J. DiBenedetto ("Judge DiBenedetto"); Municipal Prosecutor James N. Butler ("Prosecutor Butler"); Asbury Park Police Chief David Kelso ("Chief Kelso"), Asbury Park Police Officer Dewitt Bacon ("Officer Bacon"); and the Asbury Park Police Department (the "Police Department") (collectively, the "Defendants"), in connection with a motor vehicle traffic stop and subsequent prosecution for Plaintiff's alleged failure to wear a seatbelt in violation of *N.J.S.A.* 39:3-76.2f.  After the dismissal

of the quasi-criminal charge against Plaintiff, he filed the instant Complaint, asserting claims under § 1983 for malicious prosecution and other constitutional violations.  Presently before the Court is Defendants' motion to dismiss Plaintiff's First Amended Complaint ("FAC") on various grounds, including statute of limitations, failure to state a claim under Fed. R. Civ. P. 12(b)(6), and immunity.  For the reasons that follow, Defendants' motion to dismiss is **GRANTED**, and Plaintiff's claims against Defendants are dismissed with prejudice.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

For the purposes of this motion, the Court takes as true all allegations of the FAC.  Plaintiff alleges that on August 27, 2016, he parked in a public parking space on Kingsley Street in Asbury Park, directly across from Porta Restaurant ("Porta"), to drop off several passengers.  (ECF No. 3 ("FAC") at ¶ 2.)  While parked, Officer Bacon of the Asbury Park Police Department, approached Plaintiff's vehicle.  (*Id.*)  Although Plaintiff alleges that Officer Bacon was not wearing his uniform at the time, the officer identified himself as police and informed Plaintiff that he was not permitted to drop off passengers in that location.  (*Id.* at ¶¶ 2-3.)  In response, Plaintiff allegedly asked Officer Bacon, "[W]here is the sign that indicates that?  I did not see it."  (*Id.* at ¶ 3.)  Officer Bacon requested Plaintiff's driver's license, registration, and insurance documents, and instructed Plaintiff to move his car from the public parking space to a location farther north on Kingsley Street.  (*Id.*)  Plaintiff alleges that at this moment, his encounter with Officer Bacon transitioned from a "warrantless detention to an impermissible seizure of his vehicle and his person," in "violation of his civil rights protected by the Fourth and Fourteenth Amendments."  (*Id.* at ¶ 4.)

When Officer Bacon returned to Plaintiff's vehicle with his documentation, Officer Bacon issued Plaintiff a citation for operating a motor vehicle without a seatbelt, in violation of *N.J.S.A.* 39:3-76.2f.  (*Id.* at ¶ 5.)  Plaintiff "vehemently denied" any wrongdoing and "advised the officer

that it was wrong, unjust and illegal to make that claim and urged the officer to reverse his decision." (*Id.* at ¶ 6.)  According to the FAC, Officer Bacon stated that he was "doing [Plaintiff] a favor" because the fine associated with the violation was "only $46.00" and Plaintiff could pay the fine by mail.  (*Id.*)  When Plaintiff again expressed his belief that a citation was unnecessary, Officer Bacon allegedly stated, "I could give you a different ticket that will cost you over $100.00. Do you want me to do that?" (*Id.*)  Plaintiff remained silent and Officer Bacon released Plaintiff with only the seatbelt citation.  (*Id.*)

On September 9, 2016, Plaintiff appeared at Asbury Park Municipal Court, where he pled not guilty to the seatbelt violation.  (*Id.* at ¶ 17.)  Plaintiff alleges that he attempted to discuss the citation with Prosecutor Butler prior to entering his not guilty plea; however, the Prosecutor ignored his request.  (*Id.* at ¶¶ 17-18.)  Instead, Prosecutor Butler allegedly "demanded that Plaintiff plead guilty" and "pay court costs and fees."  (*Id.* at ¶ 18.)  Further, when Plaintiff first attempted to plead not guilty, Judge DiBenedetto allegedly "did not accept Plaintiff's decision and ordered Plaintiff to go back to the prosecutor and take what he was offering."  (*Id.* at ¶ 20.)  In response, Prosecutor Butler allegedly offered to "suspend" the ticket.  (*Id.* at ¶ 21.)  Plaintiff rejected the offer and informed Judge DiBenedetto of his decision to plead not guilty.  (*Id.* at ¶ 22.)

According to Plaintiff, for the next sixteen months, Prosecutor Butler and Judge DiBenedetto "forc[ed] Plaintiff to stand trial" without "a scintilla of evidence."  (*Id.* at ¶¶ 25-27.) Plaintiff alleges that Prosecutor Butler "used the leverage of the court to overshadow Plaintiff's claims that his constitutional rights were violated."  (*Id.* at ¶ 27.)  Specifically, Plaintiff alleges

that Prosecutor Butler did not comply with his discovery requests[1] pursuant to New Jersey Court Rule 7:7-7, and that he "put Plaintiff on trial knowing […] that the charges […] were unsupported by the facts." (*Id.* at ¶ 27, 36.) As for Judge DiBenedetto, the Complaint alleges that he denied Plaintiff the right to a fair trial by not allowing Plaintiff the right to elicit testimony from his own witnesses, including Porta representatives, not allowing Plaintiff to "provide his side of the story at trial[,]" and ignoring the presumption that Plaintiff was innocent until proven guilty. (*Id.* at ¶¶ 28, 35-36.)

On December 28, 2017, Plaintiff's case proceeded to trial. (*Id.* at ¶ 36.) Following testimony on direct examination from Officer Bacon and limited cross-examination by Plaintiff, Judge DiBenedetto *sua sponte* dismissed the seatbelt ticket against Plaintiff. (*Id.*)

Plaintiff brought suit on December 31, 2019, alleging constitutional violations, including that Officer Bacon's conduct described above violated his Fourth Amendment rights and that the actions of Prosecutor Butler and Judge DiBenedetto constituted malicious prosecution. (ECF No. 1, Complaint.) On January 3, 2020, Plaintiff filed the FAC. On May 21, 2020, Defendants filed the present motion to dismiss. (ECF No. 11, Defendants' Motion to Dismiss.)

## II.  <u>LEGAL STANDARD</u>

Courts undertake a three-part analysis when considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court

---

[1]      It appears that based on the allegations in the Complaint, the documents annexed to the Complaint, and Plaintiff's opposition to Defendants' motion to dismiss, Plaintiff believed Officer Bacon was working security for Porta on August 27, 2016, and not in his official capacity as a law enforcement officer for Asbury Park. Indeed, Plaintiff's discovery requests sought information related to Officer Bacon's scope of employment on August 27, 2016. (*See* FAC, Ex. 1, Police Records Request.) On December 19, 2017, however, Prosecutor Butler explained, in writing, that Officer Bacon was on duty for Asbury Park on August 27, 2016, and that no discovery existed. (*Id.* at Ex. 2, Letter from Prosecutor Butler.)

must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alteration in original).  Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotation omitted).  In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "[M]ere restatements of the elements of [a] claim[ ] ... are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (quotation omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).  "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

"Rule 12 prohibits the court from considering matters outside the pleadings in ruling on a motion to dismiss for failure to state a claim ... and a court's consideration of matters outside the pleadings converts the motion to a motion for summary judgment." *Kimbugwe v. United States*, No. 12-7940, 2014 WL 6667959, at *3 (D.N.J. Nov. 24, 2014).  "[A]n exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted) (internal quotation marks omitted).  Notwithstanding these principles, courts may not consider allegations raised for the first time in a plaintiff's opposition to a motion to dismiss. *See Pennsylvania ex rel Zimmerman*

*v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (internal quotation omitted)).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers ...." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). Nonetheless, "a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because [he] proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted). Thus, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## III.   **DISCUSSION**

Plaintiff's FAC asserts only a cause of action under 42 U.S.C. § 1983, without expressly specifying which of his constitutional rights were violated. (FAC at ¶ 37-38.) Because Plaintiff is proceeding *pro se*, the Court construes the FAC to assert a constitutional claim for malicious prosecution against Judge DiBenedetto and Prosecutor Butler. Further, Plaintiff appears to assert additional claims against Judge DiBenedetto, Officer Bacon, the City of Asbury Park, the Police Department, Chief Kelso, and Mayor Moor. First, Plaintiff appears to assert a claim against Judge DiBenedetto for violation of his Fourteenth Amendment due process rights. Plaintiff alleges that Judge DiBenedetto's decision to dismiss the traffic ticket before the conclusion of Plaintiff's cross-examination of Officer Bacon constituted a violation of his Sixth Amendment right to confront the prosecution's witness. U.S. Const. amends. VI, XIV; *see also Richardson v. Marsh*, 481 U.S. 200,

206 (1987) (finding that the Confrontation Clause of the Sixth Amendment is applicable to the States through the Fourteenth Amendment).   Second, Plaintiff alleges that Officer Bacon's "seizure of his vehicle and person" during the traffic stop constituted a violation of his Fourth Amendment rights against unlawful searches and seizures.  (*See* FAC at ¶ 4; Plaintiff's Motion to Dismiss Opp. Br., at 5.)  Third, Plaintiff appears to assert a *Monell* claim under § 1983 against the City of Asbury Park and the Police Department in connection with his purported warrantless detention and subsequent quasi-criminal trial.   Finally, Plaintiff seems to assert unspecified constitutional claims against Chief Kelso and Mayor Moor in their official and individual capacities.

Defendants move to dismiss on the following grounds: 1) statute of limitations;[2] 2) judicial immunity as to Judge DiBenedetto; 3) prosecutorial immunity as to Prosecutor Butler; 4) failure to state a claim as to all of Plaintiff's constitutional claims; and 5) qualified immunity.[3]  I will address each of these arguments, in turn.

**A.  Judicial Immunity**

At the outset, I grant Defendants' motion to dismiss Plaintiff's claims against Judge DiBenedetto because they are barred by judicial immunity.   "The Supreme Court long has recognized that judges are immune from suit under section 1983 for monetary damages arising from their judicial acts."  *Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 768 (3d Cir.

---

[2]     Because I find that Judge DiBenedetto and Prosecutor Butler are immune from suit, I will not address Defendants' statute of limitations arguments as they pertain to Plaintiff's claims of malicious prosecution against those Defendants.  I will address Defendants' statute of limitations argument, however, with respect to Plaintiff's claim against Officer Bacon for illegal search and seizure.

[3]     Because I find that Plaintiff's Fourth Amendment claim is barred by the statute of limitations and that the FAC fails to sufficiently plead that Officer Bacon violated Plaintiff's Fourth Amendment constitutional rights, *see infra*, I do not address Defendants' arguments regarding qualified immunity.

2000) (citing *Mireles v. Waco*, 502 U.S. 9, 9 (1991)); *see also Figueroa v. Blackburn*, 208 F.3d 435, 440-43 (3d Cir. 2000) (extending judicial immunity to municipal court judges).  Following the Supreme Court's guidance, the lower courts "must engage in a two-part inquiry to determine whether judicial immunity is applicable."  *Id.*  "'First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.'"  *Id.* at 768 (quoting *Mireles*, 502 U.S. at 11).  "'Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.'"  *Id.*  "With respect to the first inquiry, 'the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.'"  *Id.* at 768-69 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)).  The courts must "'draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges,' such as administrative acts."  *Id.* at 769 (quoting *Forrester v. White*, 484 U.S. 219, 227 (1988)).

"With respect to the second inquiry, [courts] must distinguish between acts in the "clear absence of all jurisdiction," which do not enjoy the protection of absolute immunity, and acts that are merely in "excess of jurisdiction," which do enjoy that protection" *Id.* at 769 (citing *Stump*, 435 U.S. at 356 n. 6). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.* (quoting *Stump*, 435 U.S. at 356–57).

Here, Plaintiff claims that Judge DiBenedetto's decision to proceed to trial absent evidence of any wrongdoing constituted malicious prosecution and that his *sua sponte* dismissal of the traffic citation during Officer Bacon's cross-examination violated Plaintiff's right to confront the

State's witness.  While the factual allegations against Judge DiBenedetto are threadbare, it is plain from the FAC that Plaintiff seeks redress for actions taken in Judge DiBenedetto's official capacity as a judicial officer.  Indeed, Plaintiff's allegations pertain only to Judge DiBenedetto's decision-making during the pre-trial and trial phases of Plaintiff's quasi-criminal proceeding.  (*See* FAC ¶¶ 28, 35.)  Plaintiff alleges that Judge DiBenedetto turned a "blind eye" to Prosecutor Butler's alleged noncompliance with state discovery rules, denied Plaintiff his right to "provide his side of the story at trial," and denied Plaintiff the right to confront his accuser.  (*Id.* at ¶ 35.)  In fact, Prosecutor Butler explained, in writing on December 19, 2017, that no discovery existed in connection with this case and, after limited cross-examination of Officer Bacon by Plaintiff, Judge DiBenedetto *sua sponte* dismissed the traffic violation **in Plaintiff's favor**.  (*See* FAC, Ex. 2, Letter from Prosecutor Butler.) It is abundantly clear that Judge DiBenedetto's actions were all taken in his official capacity, and thus, he has absolute judicial immunity; all of Plaintiff's claims against Judge DiBenedetto are dismissed with prejudice.

## B.  Prosecutorial Immunity

Similarly, Defendants assert that Prosecutor Butler is absolutely immune from suit based on his role as a prosecutor.  Generally, "a state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not subject to suit under § 1983. *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976); *see also Burns v. Reed*, 500 U.S. 478, 486 (1991). Stated slightly differently, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 271 (1993).

The Supreme Court has explained that prosecutorial immunity is intended to apply to conduct that is "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. The Court advised that "absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding, or appears in court to present evidence in support of a search warrant application[, but] absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation, when the prosecutor makes statements to the press, or when a prosecutor acts as a complaining witness in support of a warrant application." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009) (citations omitted). Indeed, a prosecutor is "absolutely immune when making [the] decision [to prosecute], even where he acts without a good faith belief that any wrongdoing has occurred." *Kulvicki v. Dawson*, 969 F.2d 1454, 1464 (3d Cir.1992).

Here, Plaintiff alleges that the prosecution of his seatbelt violation was malicious because it lacked merit and evidentiary support. Plaintiff claims that Prosecutor Butler "force[d him] to stand trial, knowingly, without a scintilla of evidence" and failed to comply with Plaintiff's requests for discovery pursuant to New Jersey Court Rule 7:7-7. In addition, Plaintiff makes vague, conclusory, and general allegations in the FAC regarding Prosecutor Butler's alleged fabrication and concealment of evidence, including the "filing of false charges." (FAC at ¶ 31.) These allegations, even if credited, however, clearly relate to Prosecutor Butler's role as prosecutor.[4] *Green v. United States*, 418 F. App'x 63, 66 (3d Cir. 2011) (per curiam) ("A

---

[4] The Court acknowledges that "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley*, 509 U.S. at 273. However, cases where courts have declined to apply absolute immunity are factually distinct from the present allegations. *See Odd v. Malone*, 538 F.3d 202, 214 (3d Cir. 2008) (finding that a prosecutor's failure to notify the court of material witness's custodial status was an administrative oversight not entitled to absolute prosecutorial immunity); *Buckley*, 509 U.S. at 275-77 (holding that prosecutors were not entitled to absolute immunity for (i) fabricating false evidence well before an indictment had issued and prior to any judicial proceeding; and (ii) making

10

prosecutor is immune from suit even if he committed perjury or falsified evidence."); *Kulwicki v. Dawson*, 969 F.2d 1454, 1464 (3d Cir. 1992) (finding that a prosecutor is absolutely immune when deciding to initiate a prosecution, "even where he acts without a good faith belief that any wrongdoing has occurred.").  Here, the alleged acts were undertaken by Prosecutor Butler while prosecuting Plaintiff and in the role of an advocate for the municipality.  Accordingly, Prosecutor Butler is entitled to absolute immunity from the claims raised in the FAC.  The claim asserted against Prosecutor Butler for malicious prosecution is dismissed with prejudice.

### C. Constitutional Claims Under § 1983 Against the Remaining Defendants

Defendants also argue that Plaintiff's constitutional claims are deficiently pled under Rule 12(b)(6).  As a general matter, a plaintiff may have a cause of action under 42 *U.S.C.* § 1983 for certain violations of constitutional rights.  That section provides,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 *U.S.C.* § 1983.  To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and that the alleged deprivation was

---

false public statements out of court during public announcement of indictment to the press); *Kalina v. Fletcher*, 522 U.S. 118, 130 (1997) (declining to apply absolute immunity to claims that a prosecutor made false testimony in "the evidentiary component of an application for an arrest warrant," because such testimony "is the function of the witness, not of the lawyer").

committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

Further, a plaintiff must allege which rights or privileges have been infringed upon by defendant's actions. *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *see also Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 171 (3d Cir. 2001).

### 1. <u>Fourth Amendment Violation Against Officer Bacon</u>

Construing the facts favorably for the *pro se* Plaintiff, I interpreted the FAC as asserting a § 1983 claim against Officer Bacon, in his individual capacity, for unlawful search and seizure under the Fourth Amendment. Plaintiff alleges that the traffic stop on August 27, 2016, constituted an unlawful detention, because Officer Bacon conducted an "investigatory detention" knowing that he lacked "reasonable articulable suspicion or probable cause" in violation of Plaintiff's Fourth Amendment rights. (FAC at ¶ 2.) Officer Bacon attacks the claim against him on the merits and on the basis of the statute of limitations.

Initially, I find that Plaintiff's Fourth Amendment claim is barred by the statute of limitations. Section 1983 has no statute of limitations of its own, but borrows the statute of limitations from state personal injury torts. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Thus, Plaintiff's § 1983 claim is governed by New Jersey's personal injury statute of limitations period, which dictates that the claim must be brought within two years of its accrual. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010). "Under federal law, a cause of action accrues 'when the plaintiff knew or should have known of the injury upon which the action is based.'" *Montanez v. Sec'y Pa. Dep't of Corr.*, 773 F.3d 472, 480 (3d Cir. 2014) (quoting *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009)).

Here, Plaintiff's alleged illegal search and seizure claim accrued on the date of the traffic stop: August 27, 2016.  *See Woodson v. Payton*, 503 F. App'x 110, 112 (3d Cir. 2012) (holding that the statute of limitations began on the date when plaintiff "indisputably knew about the alleged faults of search and seizure").  Consequently, Plaintiff's complaint had to be filed by August 28, 2018.  He did not file his complaint until December 2019.  (ECF No. 1.)  Plaintiff argues that his complaint was timely filed because the claim did not accrue until January 2, 2020, when he received a "written decision" of Judge DiBenedetto's dismissal of his seatbelt violation from the deputy court administrator.  This decision, however, did not relate to Officer Bacon's alleged unlawful search and seizure, and therefore, it had no impact on the date of accrual with respect to Plaintiff's Fourth Amendment claim.

Further, while the Court may toll, or extend, the statute of limitations in the interests of justice, the circumstances here do not support tolling.  Tolling is usually warranted when the state has "actively misled" a plaintiff as to the existence of his cause of action, there are extraordinary circumstances that prevented him from filing the claim, or he filed the claim on time but in the wrong forum.  *Omar v. Blackman*, 590 F. App'x 162, 166 (3d Cir. 2014).  However, Plaintiff does not provide any evidence, nor do I find, that the statute of limitations period should be equitably tolled in this case under any basis.  *See Huertas v. City of Philadelphia*, 188 F. App'x 136, 138 (3d Cir. 2006) (finding that a plaintiff's pro se status does not, in and of itself, entitle him to any leniency absent exceptional circumstances).  Accordingly, Plaintiff's Fourth Amendment claim for illegal search and seizure is dismissed with prejudice.

Notwithstanding the Court's dismissal for violation of the statute of limitations, Plaintiff's Fourth Amendment claim also fails on the merits.  The Fourth Amendment of the Constitution of the United States guarantees a right to be free from unreasonable seizures.  U.S. Const. amend. IV.

A seizure occurs when a government official restrains a person's freedom of movement such that the person is deprived of his or her free will to leave. *Brendlin v. California*, 551 U.S. 249, 254 (2007). A seizure is generally permissible only if it is supported by probable cause to believe the person has committed a crime. *Bailey v. United States*, 568 U.S. 186, 192 (2013).

Fourth Amendment rights may also be implicated by investigatory—or "*Terry*" —stops, which do not rise to the level of an arrest. *See Terry v. Ohio*, 392 U.S. 1, 28–30 (1968); *see also United States v. Cortez*, 449 U.S. 411, 417 (1981). An interaction may constitute a *Terry* stop when, "'taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Kaupp v. Texas*, 538 U.S. 626, 629 (2003) (quoting *Florida v. Bostick*, 501 U.S. 429, 437 (1991)). A *Terry* stop, however, must be justified by a reasonable suspicion based on an objective sign that a person is, was, or is about to be, committing a crime. *See Cortez*, 449 U.S. at 417 & n.2. "The test is one of reasonableness given the totality of the circumstances, which can include [the suspect's] location, a history of crime in the area, [the suspect's] nervous behavior and evasiveness, and [the officer's] 'commonsense judgments and inferences about human behavior.'" *Johnson v. Campbell*, 332 F.3d 199, 206 (3d Cir. 2003) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124–25 (2000)); *see also United States v. Thompson*, 772 F.3d 752, 758 (3d Cir. 2014). "To meet the reasonable suspicion standard, an officer needs only 'a minimal level of objective justification.'" *United States v. Foster*, 891 F.3d 93, 104 (3d Cir. 2018) (quoting *Wardlow*, 528 U.S. at 123)). In examining this question, a court must consider only the facts known to the officer at the time of the stop. *See United States v. Lowe*, 791 F.3d 424, 430 (3d Cir. 2015). Reasonable suspicion may be based on what the officer observes firsthand

or upon reliable information provided by another person.  *See Adams v. Williams*, 407 U.S. 143, 147 (1972).

Here, Plaintiff makes only conclusory allegations that Officer Bacon "lack[ed] reasonable articulable suspicion or probable cause of criminal activity," and therefore, the traffic stop was unlawful.  According to Plaintiff, Officer Bacon produced false statements in representing that Plaintiff's vehicle was in the middle of Kingsley Street and that Plaintiff was operating the vehicle without a seatbelt.  However, Plaintiff's allegations in the FAC belie his own position.  According to Plaintiff, Officer Bacon watched firsthand as Plaintiff dropped off several passengers across from Porta—an area where Officer Bacon explained that passenger drop-offs were not permitted. (FAC at ¶ 2-3.)  As such, as pled, Officer Bacon seemingly had probable cause to perform a traffic stop in connection with Plaintiff's activity.  Given such probable cause, Plaintiff cannot state a Fourth Amendment claim.  It is of no moment that the charge against Plaintiff was dismissed, because probable cause existed at the time Officer Bacon initiated the traffic stop.  *See Cecilia v. Randall*, No. CV 18-1433 (RMB), 2018 WL 4037676, at *2 (D.N.J. Aug. 23, 2018) (holding that the sole fact that the charges against the plaintiff were dismissed because the evidence was insufficient to establish guilt at trial is insufficient to state a Fourth Amendment claim for false arrest.); *see also Startzell v. City of Phila.*, 533 F.3d 183, 204 n. 14. (3d Cir. 2008) (finding that "the establishment of probable cause as to any one charge [of several charges] is sufficient to defeat ... Fourth Amendment claims.").  Accordingly, Plaintiff's claim against Officer Bacon for unlawful search and seizure is dismissed.

## 2.  **Claims Against the City of Asbury Park**

To the extent that a *Monell* claim can be inferred against the City of Asbury Park, that claim is also dismissed.[5]  As stated above, § 1983 imposes civil liability upon "any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Padilla v. Twp. of Cherry Hill*, 110 Fed.Appx. 272, 278 (3d Cir. 2004) (citation omitted).  Municipalities are legal entities amenable to suit for their unconstitutional policies or customs.  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978).   To recover against a municipality, a plaintiff must "demonstrate that municipal policymakers, acting with deliberate indifference or reckless indifference, established or maintained a policy or well-settled custom which caused a municipal employee to violate plaintiffs' constitutional rights and that such policy or custom was the 'moving force' behind the constitutional tort."  *Hansell v. City of Atlantic City*, 152 F.Supp.2d 589, 609 (D.N.J. 2001).  A municipality may also be liable if an employee acts unconstitutionally and the municipality failed to adequately train or supervise that employee.  *City of Canton v. Harris*, 489 U.S. 378, 380 (1989).

---

[5]     I find that Plaintiff's claim against the Police Department fails because Plaintiff has sued the Police Department along with the City of Asbury Park.  "In New Jersey, a municipal police department is not an entity separate from the municipality." *Trapp v. New Jersey*, No. 17-10709, 2018 WL 4489680, at *6 (D.N.J. Sep. 19, 2018) (citing *N.J.S.A.* 40A:14-118 (stating that that New Jersey police departments are "an executive and enforcement function of municipal government")).  "In Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004) (quotation and citation omitted); *see also Trapp*, 2018 WL 4489680, at *6 (finding that the defendant police department cannot be sued under § 1983 and dismissing all claims against them); *Trafton v. City of Woodbury*, 799 F. Supp. 2d. 417, 429 (D.N.J. 2011) (same) *Catlett v. N.J. State Police*, No. 12-153, 2013 WL 2181273, at *4 (D.N.J. May 20, 2013) (same). Thus, to the extent Plaintiff asserts a claim against the Police Department, it is dismissed with prejudice.

Here, Plaintiff brings the *Monell* claim in connection with his alleged malicious prosecution for the seatbelt violation.  However, as found above, Plaintiff's claims against Judge DiBenedetto and Prosecutor Butler are dismissed based on their immunity from suit.  In addition, the claims against Officer are dismissed.  Where there is no underlying constitutional violation, there can be no *Monell* claim.  *See Queensbury v. Petrone*, No. 14-7230, 2015 WL 4715323, at *4 (D.N.J. Aug. 7, 2015) ("There are no claims remaining in this matter that are based on a constitutional violation.  Therefore, Plaintiff's *Monell* claim must be dismissed.").  Having found that no constitutional violation remains, Plaintiff's *Monell* claim against the City of Asbury Park cannot stand.

Moreover, when viewed on the merits, the FAC makes only general, conclusory, and unsupported allegations about how Plaintiff was allegedly subjected to a different set of "standards, laws, rules and procedures."  (FAC at ¶ 2.)  Beyond these conclusory allegations, however, Plaintiff does not allege that an underlying custom or policy within the municipality, including the Police Department, the municipal court, or any other internal municipal entity, attributed to the alleged infringement of Plaintiff's constitutional rights.  *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (finding that plaintiff must specify a custom or policy); *see also Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007) (requiring that plaintiff show a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation").   Indeed, Plaintiff makes no direct allegations against the City of Asbury Park in the entirety of the FAC.  Thus, Plaintiff's claim against the City of Asbury Park is dismissed with prejudice.

### 3.  Claims Against Chief Kelso and Mayor Moor

The Court construes Plaintiff's FAC to assert claims, pursuant to § 1983, against Chief Kelso and Mayor Moor.  The Court notes, however, that vicarious liability is "inapplicable to" § 1983 suits, and that to the extent Plaintiff seeks to bring suit against Chief Kelso or Mayor Moor, it must be for their own actions, and not the acts of others.  *See Iqbal*, 556 U.S. at 676; *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."); *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.").

As for Chief Kelso, I construe the FAC to assert a supervisory liability claim for his alleged involvement in the traffic stop and purported unlawful search and seizure initiated by Officer Bacon.  Similar to the *Monell* claim, Plaintiff's underlying Fourth Amendment claim against Officer Bacon has been dismissed because it is barred by the statute of limitations.  Accordingly, Plaintiff's claim against Chief Kelso is also dismissed with prejudice.  *See Bullock v. Borough of Roselle*, No. 17-13208 (KM), 2018 WL 4179481, at *8 (D.N.J. Aug. 31, 2018) (dismissing § 1983 supervisory claim against a police chief because the underlying constitutional claim against the subordinate police officer was barred by the statute of limitations); *see also Waselik v. Twp. of Sparta*, No. 16-4969 (KM-JBC), 2017 WL 2213148, at *5 (D.N.J. May 18, 2017) (dismissing supervisory claim where the underlying § 1983 tort was dismissed for violating the statute of limitations).

Additionally, in analyzing the merits, I find that the FAC does not include any allegations pertaining to Chief Kelso's involvement in, or knowledge of, Plaintiff's traffic stop and subsequent

prosecution. "'[T]here are two theories of supervisory liability,' one under which supervisors can be liable if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm,' and another under which they can be liable if they 'participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.'" *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n. 5 (3d Cir. 2010) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)).

Here, Plaintiff's opposition brief claims only that "upon information and belief[,]" Chief Kelso was Officer Bacon's "instructor, supervisor, superior and [was] responsible for Bacon's performance and understanding of the rules and regulations, state and federal law, including "investigatory stops and searches and seizures[.]" (Plaintiff's Opposition Br. at 5.) The FAC fails to allege that any purported mistakes or missteps made by Officer Bacon during the investigatory stop of Plaintiff resulted from Chief Kelso's training, supervision, or any of his failures. Merely alleging that Chief Kelso was Officer Bacon's supervisor at the time Plaintiff received his seatbelt violation is insufficient to establish supervisory liability under § 1983. *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001) (finding that it is not enough to allege "that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did."). Further, Plaintiff makes no allegations that Chief Kelso participated in Plaintiff's prosecution for the seatbelt violation. Therefore, Plaintiff's claim against Chief Kelso is dismissed with prejudice.

With respect to Mayor Moor, Plaintiff has failed to allege sufficient facts demonstrating the Mayor's involvement in the traffic stop or the subsequent municipal proceedings to establish a § 1983 claim against him in either his official or individual capacity. Indeed, despite naming Mayor Moor as a defendant in this case, the FAC does not assert a single factual allegation related

to him.  Rather, Plaintiff lists Mayor Moor as a party to this action in paragraph one of the FAC and does not mention him again in the remaining thirty-eight paragraphs.  Plaintiff's claims are solely based on his purported unlawful detention by Officer Bacon on August 27, 2016, and the subsequent prosecution of his seatbelt violation.  The FAC, however, is devoid of allegations supporting an inference that Mayor Moor was personally involved or even aware of Plaintiff's seatbelt violation.  Similarly, the FAC does not allege that Mayor Moor was involved in the investigation of the underlying incident or the decision to proceed with Plaintiff's quasi-criminal trial.  Consequently, Plaintiff's allegations, accepted as true, fail to set forth plausible grounds for Mayor Moor's involvement, as required to state a § 1983 claim against him.  Thus, any claims asserted against Mayor Moor are dismissed with prejudice.

## IV.   **CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED**.  Plaintiff's claims against Defendants are dismissed with prejudice.


Dated: October 26, 2020                        /s/ Freda L. Wolfson
                                               Freda L. Wolfson
                                               U.S. Chief District Judge